L. H. McMurray v. Commissioner.
L. H. McMurray v. Commissioner
Docket No. 6771.
United States Tax Court
1946 Tax Ct. Memo LEXIS 94; 5 T.C.M. (CCH) 755; T.C.M. (RIA) 46211; August 28, 1946
*94 Alan W. Boyd, Esq., and John W. Houghton, Esq., for the petitioner. Lester M. Ponder, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined that there are deficiencies in income tax for the years 1938, 1939, 1940, and 1941 in the respective amounts of $2,240.38, $933.09, $2,883.68, and $2,239.02. The only question in issue is whether petitioner is taxable on the entire income from a livestock business which he claims to have been operated by him and his wife as equal partners. Petitioner filed his returns for the taxable years with the collector for the district of Indiana. Findings of Fact Petitioner has conducted a livestock dealer business consisting of the purchase and sale of hogs at Indianapolis since 1920. He succeeded to the business upon his father's death in that year. His father had operated it for many years under his name, L. H. McMurray. Petitioner continued the business under the same name at the same location and with the same capital. Most of the old employees remained with the firm. Most of the old customers also continued to do business with petitioner. He had become acquainted *95 with many of them during the years which he had spent in assisting his father in the business. The business of the firm consists of buying hogs in job lots from the commission men at the Union Stock Yards at Indianapolis and selling them in special lots, graded as to size and other specifications. The daily purchases run from $2,000 or $3,000 to as high as $75,000. All purchases, as well as sales, are at the quoted market price and are for cash, although it is sometimes several days before remittances are received on shipments to some of the customers. There are about 12 or 15 regular customers, most of whom are small packers or jobbers located in the eastern United States. Each customer usually wants a particular size or type of hog. The hogs are purchased in miscellaneous lots as brought in by the farmers and are then graded according to size and quality and each customer is provided with the type that he wants. About half of the purchases are on advance orders, so that the hogs are kept just long enough for grading and shipping. Those purchased in advance of orders are sometimes held for several days. In all instances the hogs are purchased outright and the firm takes complete *96 title to them. If the market advances there is a gain to the firm and if it drops there is a loss. The purchasers pay a fee or commission for the grading and handling. This is the principal source of petitioner's income. Petitioner began assisting his father in the business at an early age and became familiar with all phases of the work. He has been buying and grading hogs for a number of years. There are two other experienced buyers among the firm's employees. The buyers have to go into the pens and examine the hogs purchased as to size, type and quality. It requires many years' experience for a buyer to gain a thorough knowledge of the business. On February 2, 1937, petitioner and his wife executed a form of partnership agreement, effective as of January 1, 1937, in which they agreed to operate the business conducted under the firm name of L. H. McMurray as equal partners and to share equally in the profits and losses therefrom. On the same date petitioner executed a bill of sale transferring to his wife, as of January 1, 1937, an undivided one-half interest in the assets of the business, subject to one-half of its liabilities. The net worth of the business, according to the *97 books, was $9,831.27 at December 31, 1936, and $16,843.10 at December 31, 1937. It stood at $14,773.70 at the close of the taxable year 1941. On February 3, 1937, petitioner and his wife executed and filed with the county clerk a "Certificate of Form or Partnership Engaged in Business Under Name Other Than Their Own," representing that they were engaged in carrying on a business as livestock brokers under the name of "L. H. McMurray." At or about the same time petitioner's wife was authorized to draw on the firm's bank account known as the "Livestock Account." Prior to that time petitioner and the bookkeeper were the only persons authorized to draw on that account. Petitioner's wife also opened a bank account in her own name in which she deposited funds which she withdrew from the firm's account. The withdrawals of the firm's funds were equalized between petitioner and his wife. Petitioner never exercised any control over her funds. They divided their living expenses about equally. Petitioner's wife has never taken any active part in the management or operation of the business. She has no knowledge of the livestock business except in a general way. She knows nothing about buying *98 and grading hogs. She was a beauty operator before her marriage to the petitioner. She has not worked since her marriage. The net income of the livestock dealer business for each year 1938, 1939, 1940, and 1941 was, respectively, $29,226; $19,222; $24,223; and $16,395. Petitioner and his wife were not conducting the livestock business operating under the name of L. H. McMurray as a partnership during the taxable years 1938 to 1941, inclusive. Opinion In this case, no real business purpose was served by the formation of an alleged partnership with the wife of the petitioner. The wife brought no new capital, originating with her, into the business; she gave no services to the business; she did not contribute in any way to the control and management of the business. Petitioner's efforts, as a manager and as the chief participant in the business, were the determining factor in producing income from the business. The business was well established as a sole proprietorship, and the execution of formal documents by petitioner in the early part of 1937 did not bring about any change in the business. Petitioner continued in absolute control of the business after the alleged partnership *99 was formed as he had before. The skill and experience which was required in this livestock dealer business were the essential and the primary factors in the realization of gain. Petitioner's wife had no capacities for engaging personally in the conduct of the business. No capital not available for use in the business before was brought into the business as a result of the formation of the partnership. The issue presented falls squarely within the case of ; affirmed by the Supreme Court, ; ; see also ; . Under the authority of these decisions, it is held that petitioner is taxable on the entire income of the business in question in the taxable years, and that petitioner's wife can not be recognized as a partner with him in his livestock dealer business for income tax purposes. Decision will be entered for the respondent.